Linda Graves, hereby declares, under penalty of perjury, that

am a licensed social worker and am currently employed by Jewish Home and Hospital ("Jewish Home"), a nursing home where I have worked for fourteen years.

2. In my capacity as a social worker, I provide discharge planning services to residents and have done so throughout my fourteen years at Jewish Home. As a discharge planner, I work with a resident's care team to determine whether discharge to the community is appropriate and medically advisable. If it is determined that a discharge is appropriate, I then work to ensure that a resident will receive all of the services necessary to enable the resident to live safely in the community.

3. I make this Declaration in Support of Matilda Belovic's motion for a Preliminary Injunction because I believe that Matilda is able to safely return home and that APS is failing to ensure her safe return.

4. I have known Matilda since December 22, 2006, when she was admitted to Jewish Home. Since her admission, I have seen Matilda on a regular basis, approximately one to two times per week.

5. Matilda is a single, 94 year-old woman who is a client of APS. She is a pleasant, hospitable, and gracious woman who prior to October 2006, lived at home with assistance.

6. Matilda has been diagnosed by the doctors here at Jewish Home with atrial fibrulation, hypertension, B-12 deficiency, osteoarthritis and mild dementia.

7 Matilda was admitted to Jewish Home from Gracie Square Hospital on December 22, 2006, after she attempted to leave her previous nursing home Fieldston Lodge.

8. In the beginning of January 2007, shortly after Matilda was admitted to Jewish

Home, her treatment team here, including her doctors, nurses and myself, determined that she was able to live safely at home in the community. Jewish Home has determined that Matilda should return with the same services she previously received in addition to increased home care and an article 81 guardian.

9. Matilda is able to take care of herself with assistance. She is able to feed herself and use the toilet independently. She needs partial assistance and supervision at times with grooming, dressing, washing and bathing. She needs assistance at times with household chores. In addition, she needs reminding at times to take her medication and assistance with preparing her medication.

10. All of Matilda's needs could be addressed at home by the various community-based services she was receiving prior to her removal in October 2006, in addition to increased home care services and an article 81 guardian.

I understand that Bronx Jewish Community Council ("BJCC") could immediately restore EISEP case management and that Matilda's home-delivered meals could be restored. The JASA mental health unit has continued to provide Matilda therapy during her stays at Fieldston Lodge Nursing Home and Jewish Home, and would be able to continue with Matilda in her home. In addition, I understand that Matilda's primary care physician, Dr. DeBlasio, who she regularly saw in the community prior to being admitted to the nursing home, is able to pour Matilda's medication on a regular basis.

12. And finally, BJCC Home Attendant Services has agreed to provide Matilda with home care. However, in order to arrange for Medicaid to pay for the home care, the application for home care must be referred through HRA

13. Thus on January 12, 2006, I submitted an M11Q application for homecare to

APS.

4.     On February 13, 2007, HRA sent a notice to Matilda stating that "since you currently have no legal guardian in the outside community, it was felt that your health and safety needs should be met by a level of care that is higher than that which a home attendant can offer. A higher level of care is suggested."

5     A couple of days after we received HRA's February 13th Notice, I spoke with Arlene Kelly at the 94th Street CASA about the notice. Ms. Kelly informed me the CASA was concerned about returning Matilda home because there was no Article 81 guardian in place and also because the CASA believed Matilda needed more hours of home care than was requested by the nursing home.

16.    Thus, on March 14, 2007, in conjunction with Sue Tozzi of BJCC, Jewish Home submitted a new M11-Q application for home care services to APS. The application requested increased home care services for Matilda in the amount of two 12-hour shifts to address the CASA's concern that Matilda not be left alone. While this request for increased home care services addressed one of the CASA's reasons for denying the initial home care application, the lack of an Article 81 guardian may remain an impediment to Matilda receiving home care. I understand that APS only submitted an application for an Article 81 guardian in March 2007.

17.    It is the opinion of Matilda's treatment team at Jewish Home that Matilda should live at home in the community. Matilda is desperate to return home and it is not necessary for her to be in a nursing home. Matilda could safely reside at home if the services she previously received while living in the community were reinstated and if she was provided increased homecare services. Also, an article 81 guardian could help Matilda handle her finances better.

18. In addition, understand that Matilda needs APS to take steps to recertify her Section 8 subsidy since they allowed it to be terminated after she was admitted to the nursing home in October 2006, and that she needs APS' help in reinstating her food stamps which they similarly allowed to be terminated in July 2006 by failing to recertify her case.

WHEREFORE, I respectfully request that this Court grant the motion for a Preliminary Injunction directing the defendants to promptly provide or ensure the provision of the services needed to return Matilda Belovic to her home in a safe situation.

_____ LCSW
Linda Graves

Dated: April 4, 2007
       Bronx, New York