**EXHIBIT H**

**Declaration of Mary B.**

MARY B. hereby declares under penalty of perjury that the following is true and correct:

1. I make this declaration in support of Plaintiffs' motion for a preliminary injunction requiring Adult Protective Services ("APS") to provide me and others with adequate protective services.

2. I am sixty-one years old and I suffer from asthma, diabetes, arthritis, migraine headaches, angina, high cholesterol, high blood pressure, stomach ulcers and blood clots in my left leg. I also have and am being treated for Human Immunodeficiency Virus ("HIV"), for which I tested positive in 2006. In addition to my physical problems, I suffer from schizophrenia and depression.

3. Because I do not want anyone to find out that I am HIV-positive, I am proceeding in this action anonymously.

4. I have had 2 strokes, one in 2002 and one in 2005. The first stroke I suffered left me with temporary numbness on my right side, which eventually dissipated. However, as a result of the second stroke, I lost my voice for a month and a half, the right side of my face is partially paralyzed, and I have a weakness in my right leg that causes me to walk with a limp. It also caused blood clots in my brain, which give me severe memory problems and make speaking difficult. The blood clots also make it difficult for me to perform household tasks such as cooking and handling dishes, and I have difficulty holding things and writing.

5. I live with my adult son who is mentally disabled and receives SSD benefits.

6. Because of my numerous physical and mental problems, and the medications that I am required to take as a result of these problems, it is very difficult for me to remember exact dates.

7. I found out that I was a client of APS in late 2005. An APS employee, Naisha Sostre, came to my home while I was in a hospital. My son told Ms. Sostre that I was in the hospital and would be home soon, and she promised to return another day.

8. In or about early 2006, about one month after I was released from the hospital, Ms. Sostre came to my home while I was there. Ms Sostre told me that she was my APS caseworker, that she knew that I had been having trouble paying my rent on time, and that APS would help me clear up the arrears and help me pay the rent on time in the future.

9. During that visit, I explained to her that I did not have enough money for food and asked her to help me obtain Food Stamps. I previously received $162 in Food Stamps until 2004 when I was living for a short time in a homeless shelter. After I left the homeless shelter, I never got Food Stamps again.

10. She told me that she would make an application for Food Stamps for me.

11. I also asked her help me with various problems I was having with my SSI benefits. Over $60 per month was being deducted from my SSI check and I did not know why. $60 more dollars would help me afford to do laundry more often (now, I can only afford to wash my clothing every two weeks), would help me buy more food and more bottled water (which I need to drink due to my medical condition), and buy necessary personal items such as soap, shampoo, powder and medicinal ointment.

2

12. Additionally, I wanted to arrange for my SSI checks to be deposited directly into my bank account. She said that she would look into why the money was being deducted from my SSI check and help me to get my check direct deposited.

13. I also told her that I had recently tested positive for HIV and needed help learning about what this meant and how to properly care for myself. I asked her if she could find me help and she told me that she would find me a support group and a social services program for people with HIV.

14. Although Ms. Sostre had promised to help me with these problems, over the next four or five months, Ms. Sostre did not provide me with any of the help that she had promised me.

15. Most importantly, although Ms. Sostre had promised me that APS would manage my finances and pay my rent for me, it did not do so and, on a monthly basis, I received threatening letters from my landlord, New York City Housing Authority ("NYCHA") about the non-payment. On some occasions, those letters were accompanied by a "THREE-DAY NOTICE TO VACATE" the premises.

16. In March of 2006, I received a notice of eviction from my apartment. I called Ms. Sostre, and she told me that I should call a lawyer. She did not explain why APS was not paying the rent, and otherwise offered me no assistance whatsoever.

17. I then contacted a lawyer who has represented on previous housing matters, Joseph Krummel at the New York Legal Assistance Group. He agreed to represent me in this matter.

18. I had to go to court more than once, and Mr. Krummel informed me that eventually, after failing to pay my rent for many months, APS admitted their failure and arranged for my rent arrears to be paid. The case was eventually settled.

19. During the summer of 2006, APS finally began to pay my rent.

20. Even after APS began to pay my rent, the rent was (and is) paid late almost every month, and almost every month I received threatening letters from NYCHA about the non-payment. Usually, those letters were accompanied by a "THREE-DAY NOTICE TO VACATE" the premises. Every time I received one of these letters I called Ms. Sostre or Carmen Jones, Ms. Sostre's supervisor, but was not always able to reach them.

21. Because of APS' failure to pay my rent on time, NYCHA brought a Termination of Tenancy Proceeding against me shortly thereafter. I again contacted Mr. Krummel at NYLAG and he was able to settle the matter for me in January of 2007.

22. In December of 2006, I called Ms. Sostre again and explained that I was very upset about the threatening letters and "THREE-DAY NOTICE TO VACATE." She asked me to send her some of the letters, which I did. As far as I can tell, she did nothing to remedy this situation and I never heard from her again. I still receive the letters every month, and am very afraid of being evicted.

23. When APS finally began to pay my rent during the summer of 2006, they took the full amount of my rent, $299, out of my $564 SSI check, even though my son is responsible for half of the $299 monthly rent. I told this to Ms. Sostre.

24. Despite the fact that I am only responsible for half of the rent, APS told me that they were going to take the full rental amount out of my SSI check and told me I

would have to obtain my son's portion of the rent directly from him. My son is not often home and it can be difficult for me to get the money from him. This greatly reduces the amount of income I have to spend and makes it difficult for me to buy food and necessities I need to survive. I asked Ms. Sostre and Ms. Jones to help me with this situation but again, they did nothing.

25. Moreover, instead of giving me the remainder of my SSI money on the first of the month when they get it, APS usually sends the remainder so that it arrives on the 9th or 10th of the month. I often run out of money for food between the first and the tenth of the month. During this time, if I am physically able, I go to a free food pantry for food, or if I am not able, I have to borrow money from a friend to eat. There are days I have gone without food.

26. During the fall of 2006, I met with my APS worker, Ms. Sostre, for the third and final time. I had called her the day before to let her know that I did not have enough money to buy food and was hungry. I explained that I could not get to the Food Pantry because my bad leg was acting up. She came to visit the next day and saw me eating a plate of food that a kind neighbor had made up for me.

27. Ms. Jones later told me that because Ms. Sostre had seen me eating food that day, she assured APS that I was fine and that APS would not help me get any more food.

28. In December of 2006, one day I was so hungry, I called Ms. Sostre crying, and begging her to help me get food. That day, APS sent over about $10 worth of food, which I ate in one day. After that, no more help came.

29. During the four to five months after I first spoke with Ms. Sostre, I did not receive the Food Stamps that she had promised that she would obtain for me. I called Ms. Sostre and Ms. Jones, on several occasions during that period, and told them that I did not have enough money to buy food and that I was hungry. They told me they would "look into it." I never heard back from either of them on that issue, although I called them many times.

30. Finally, in mid 2006, I received a letter saying that my application for Food Stamps had been denied because I was over the income limit to be eligible for Food Stamps. I called both Ms. Sostre and Ms. Jones and told them about the letter, but, as far as I know, neither of them did anything about it.

31. During this period, I often did not have enough money to buy food and had to either borrow from a kind neighbor or get food from the free Food Pantry. Obtaining food from the free Food Pantry was difficult because I have to walk there and often my leg is in too much pain to walk. This was also very frustrating, because I knew that I was eligible for Food Stamps and did not know why I was not receiving them. I called Ms. Sostre and Ms. Jones many times requesting help with this situation. Most of the time, I was not able to get through to them and when I did speak to one of them, they did not provide me with any help.

32. In late February of 2007, a new worker from APS came to visit me. I do not know his name. He told me that Ms. Sostre was on maternity leave and that he was taking her place as my case worker. I explained to him that I needed help getting Food Stamps, help getting the deductions from my SSI taken care of, help finding an HIV

6

support group and for APS to start paying my rent on time. He told me that he would look into this.

33. The male APS worker came back to visit me again two weeks later. At that time, he told me that he would make an application for Food Stamps for me.

34. On March 16, 2007, I received a "Notice of Transfer of Case to Food Stamp Center" in the mail saying that I was eligible for Food Stamps and that my case had been transferred to a Food Stamp Center. The letter did not tell me the value of the food stamps that I was eligible for.

35. Shortly thereafter, I received a document entitled "ACTION TAKEN ON YOUR FOOD STAMP CASE (NYC)". It said that I would be receiving $13 per month in Food Stamps. This is not enough for me to feed myself for the month.

36. I am hungry some days every month.

37. I have not heard back from the APS worker about getting the deductions from my SSI reduced or stopped, finding an HIV support group or about APS paying my rent on time.

38. On January 1, 2007, it appears that my SSI benefit was raised from $564 per month to $606 per month. Even though I believe my rent has also increased, I should be getting more money per month from APS. However, every month APS still sends me the same $264 per month as I got when my SSI benefit was $564 per month. The extra money would allow me to buy more food and other necessities that I very much need. I do not know why APS has not sent it to me.

WHEREFORE, I respectfully request that this Court grant my motion for a Preliminary Injunction directing the defendants to promptly provide or ensure the provision adequate protective services to me.

Dated: April, 6 2007
       New York, New York

 

                                                                *Mary B.*
                                                                 Mary B.