# EXHIBIT I

JOSEPH C. KRUMMEL, hereby declares under penalty of perjury that the following is true and correct:

1. I make this declaration in support of Plaintiffs' motion for a preliminary injunction.

2. I am an attorney with the New York Legal Assistance Group, and admitted to practice law in the State of New York. I have represented MARY B. ("Ms. B.") in various housing matters since January of 2005, when she began having problems with her landlord, the New York City Housing Authority ("NYCHA"), in which the NYCHA alleged that she had not been paying her rent in a timely manner.

3. By late 2005, I realized that, as a result of her numerous mental and physical impairments, Ms. B. was having trouble managing her finances and taking care of herself. On December 22, 2005, I contacted Adult Protective Services ("APS") and made an online referral to get Ms. B. help.

4. On December 27, 2005, an APS caseworker, Ms. Nesbeth, called me about Ms. B. I immediately returned her call.

5. On January 5, 2006, I finally connected with Ms. Nesbeth. She told me that she had seen Ms. B. in the hospital, and that she was going to refer Ms. B. for a psychiatric evaluation as well as arrange for APS to take over Ms. B's financial management.

6. On February 1, 2006, Ms. Nesbit left me a message saying that Ms. B. had been served with a notice of eviction. When I called Ms. B., her adult, mentally disabled son, with whom she lives told me that his mother was still in the hospital. When I contacted Ms. B., she told me that she was not aware that she had been served with a

notice of eviction and that she thought her son had mailed her January and February rent for her. She added that she did not trust her son to mail the rent, but did not have anyone else to assist her.

7. Later that day, I called Ms. Nesbit at APS, and she told me that Ms. B. was scheduled for a psychiatric evaluation by APS on February 13, 2006. During that conversation she reaffirmed that APS was going to manage Ms. B's money because of both her son's behavior, and Ms. B's own disabilities. She told me that the eviction had been scheduled for February 15, 2006, and that she had already called the Marshal to tell him that Ms. B. had become an APS client. I told Ms. Nesbit that I would file an Order to Show Cause in Housing Court to request a stay of the eviction, and she told me that she would get Ms. B's rental arrears paid.

8. On February 9, 2006, the Order to Show Cause was signed by Judge Cohen, Part E, in the Civil Court of the City of New York, New York County, with a return date of February 22, 2006. The next day, I called Ms. Nesbitt and left her a message with the details of the Housing Court proceeding.

9. On February 21, 2006, I called Ms. Nesbitt, who told me that Ms. B. had been given a psychiatric evaluation, and that APS was going to take on Ms. B. as a client. She further told me that APS would be appointing a guardian *ad litem* for Ms. B's court proceeding who would arrange for the payment of her arrears. She added that Ms. B's new case worker would be Naicha Sostre.

10. That same day I called Ms. Sostre and left her a message to call me back regarding Ms. B and the appointment of a guardian *ad litem*.

11. On February 22, 2006, the return date of the Order to Show Cause, I adjourned the case until March 28, 2006 in order for APS to have time to seek appointment of a guardian *ad litem*. While in court, I found an APS employee who was in Court on a different matter. After some phone calls to the APS office, the employee acknowledged that APS was going to assist Ms. B. and told me that they would get Ms. B's arrears paid.

12. On March 1, 2006, I got a message from Ms. Sostre, who said that Ms. B. had been approved for a Public Assistance one shot payment of $1,176.40.

13. On March 3, 2006, Ms. Sostre informed me that the Public Assistance one shot payment payable to NYCHA had arrived at APS. I requested that she release the check to NYCHA and have NYCHA call me if there were any problems.

14. Notwithstanding, on March 28, 2006, Ms. B. received a notice from NYCHA that she was scheduled for a NYCHA termination of tenancy hearing for the following day. Termination of tenancy is a NYCHA administrative law proceeding, presided over by an administrative law judge, that NYCHA may hold in order to evict a tenant when the eviction is based on a breach of NYCHA rules and regulations. NYCHA also has the opportunity to go straight to housing court to bring an eviction proceeding against a tenant. I immediately contacted NYCHA and requested an adjournment of that hearing.

15. The next day I appeared in Housing Court and adjourned the case to April 21, 2006 because APS had again failed to send the promised Public Assistance one shot payment to NYCHA.

16. On April 21, 2006, I entered into a settlement of the eviction proceeding because NYCHA had finally received the $1776.40 check from APS. That day, I also found out that Ms. B's NYCHA termination of tenancy hearing had been rescheduled for June 6, 2006.

17. On May 12, 2006, Ms. B. called me and said that NYCHA told her that she owes rent for the month of May, although APS was supposed to have taken over her financial management. She also advised me that she had lost her identification and was having difficulty cashing her SSI check.

18. On May 19, 2006, Ms. B received a "THREE-DAY NOTICE TO VACATE" her apartment and a letter stating that she owed NYCHA $279 in back rent. It appeared that APS had again failed to pay her rent.

19. On June 6, 2006 I appeared at the rescheduled NYCHA termination of tenancy hearing at which time the NYCHA paralegal told me that that neither Ms. B. nor APS paid the rent for April, May or June. The hearing was again adjourned.

20. On June 8, 2006, Ms. B. called me and told me that while she had been able to pay her May rent, she had not paid either April or June rent. During this time APS had not paid Ms. B's rent or helped her in any way with the promised financial management.

21. On June 15, 2006 I got a call from a female APS caseworker who informed me that APS was going to provide a grant on Ms. B's behalf for one month's rent. She said that APS recognized that the failure to pay the rent in a timely manner was APS' fault because it failed to assist Ms. B. with the financial management as promised.

I advised the APS caseworker to call Ms. B's NYCHA project manager to alert him to this turn of events and she assured me that she would do so.

22. On July 13, 2006, Ms. B. informed me that she received notification in the mail from Housing Court stating that she was again being sued by NYCHA for rent she allegedly owed.

23. The next day, July 14, 2006, Ms. B. called again, and said that she had been told by APS that she needed to pay July's rent, and that APS would pay May's rent. She also told me that she had been served with papers, with a return date of July 28, 2006, about a court eviction proceeding against her that had been postmarked June, 2006. I told her that I would file an Answer in court on her behalf, and would call her APS worker and let them know about these new events.

24. I immediately called Ms. Sostre and told her that I would file an Answer on Ms. B's behalf in Housing Court the next week.

25. On July 18, 2006, Ms. B. informed me that she had paid her July rent the week before, and that APS was supposed to pay May and June. I then attempted to call Carmen Jones, Ms. Sostre's APS supervisor, to inquire what APS was doing to help Ms. B. Ms. Jones did not answer the phone, and I was not able to leave a message because her voice mail box was full.

26. On July 21, 2006, I filed an Answer on Ms. B's behalf in court. I again called APS and left a voice mail message to call me.

27. On July 27, 2006, I again left a voice mail message at APS to call me about Ms. B's case.

28. On July 28, 2006, I appeared in Housing Court on behalf of Ms. B. No APS representative appeared in court, and I had not received any return calls in regard to the voicemails I had left for APS. The NYCHA attorney informed me that 3 months of rent had not been paid. The court agreed to adjourn the case until August 29, 2006 so APS could be present.

29. On August 3, 2006 I finally got a phone message from an APS worker named Tony Musello about Ms. B. I immediately called him back and left him a voicemail message.

30. On August 7, 2006, I finally heard back from Mr. Musello. He told me that APS had, on July 11, 2006, applied for a Public Assistance one shot payment for the three months of back rent owed, and that APS was finally going to begin Ms. B's financial management.

31. Additionally, on August 10, 2006 I received a letter from NYCHA which stated that Ms. B's termination of tenancy hearing had been adjourned to August 22, 2006. I immediately requested another adjournment because I was out of town on that day.

32. I called Ms. B. and told her of the adjournment of her NYCHA termination of tenancy hearing. During that call Ms. B. told me that APS told her that she had gotten approved for APS to pay her May and June rent. She said that her home-care aide had helped her mail her August rent.

33. On August 28, 2006 I received a message from Ms. Sostre that APS had finally written the delinquent rent check, and that she personally called NYCHA to notify

them to come pick it up. I immediately left her a return message inquiring about the amount of the check, and if it had been received yet by NYCHA.

34. I then called Ms. B. who told me that she was having trouble with her SSI benefits being directly deposited at the Bank of America. Ms. B. did not know how she could withdraw money from the account because no one had given her any instructions. I then left another message with Ms. Sostre asking her to help Ms. B. with her trouble with the depositing of her SSI checks.

35. On August 29, 2006, I appeared in Housing Court and the proceeding was discontinued because the APS check in the amount of $897 was received by NYCHA and all of Ms. B's rent was paid through the end of August.

36. When I called Ms. B. to tell her that the case had been discontinued, she admitted to me that her adult son who she lives with, who is developmentally disabled, had been stealing her money. She was having a very difficult time comprehending the situation. She also told me that her son has taken almost $600 from her, and she could not find him.

37. On August 31, 2006 it appeared that APS had begun to assist Ms. B. with the financial management because they became Ms. B's representative payee for her SSI, and began to pay her monthly rent. However, Ms. B. is only responsible for half of her $299 monthly rent, and APS was taking the full $299 out of Ms. B's SSI check. When Ms. B. informed her APS worker of the fact that she was only responsible for half of the rent, APS told her that she needed to collect her son's share of the rent directly from him. However, it is very difficult for Ms. B. to collect the money from her son.

38. On October 5, 2006 Ms. B. called me and told me that she received a letter from NYCHA that said that the termination of tenancy hearing had been adjourned until October 10, 2006. I told her that I would appear on her behalf.

39. On October 10, 2006 I attended the NYCHA termination of tenancy hearing. The NYCHA paralegal attempted to settle the case by putting Ms. B. on probation for one year. This made no sense because APS is supposed to be paying her rent. I advised the paralegal that we wanted a quick hearing date due to Ms. B's poor health. She told me that an attorney would be assigned to the case, and that we would get a letter for a new hearing date shortly thereafter.

40. On October 16, 2006, Ms. B. called me and said that she had gotten another "THREE-DAY NOTICE TO VACATE" at her apartment and an accompanying letter stating that she owed NYCHA $296 in rent. I immediately called Ms. Sostre and left her a voicemail message, advising her that APS had once again failed to pay Ms. B's rent and that Ms. B. had received another "THREE-DAY NOTICE TO VACATE" at her apartment.

41. On December 14, 2006 Ms. B. informed me that she received a letter from NYCHA stating that her NYCHA hearing had been scheduled for January 11, 2007. She also told me that she kept getting letters from NYCHA stating that her rent was not being paid.

42. I attended Ms. B's NYCHA hearing on January 11, 2007. The NYCHA attorney again offered Ms. B. one year of probation as a settlement. I explained that because APS has full control over Ms. B's money, putting Ms. B. on probation did not

make sense. The NYCHA attorney agreed to review the case and possibly consider discontinuing the matter. The hearing was adjourned until February 6, 2007.

43. On January 12, 2007 the NYCHA attorney called me and agreed to withdraw the termination of tenancy proceeding against Ms. B. When I called to tell Ms. B. that the proceeding was being withdrawn, she informed me that she was still receiving threatening letters from NYCHA every month about her rent being past due.

44. On February 5, 2007, Ms. B again informed me that she was being harassed by NYCHA about late rent payments. When I called the NYCHA attorney regarding this matter she told me that APS pays Ms. B's rent late every month thereby prompting these letters.

45. To this day, every month, Ms. B. still receives a "THREE-DAY NOTICE TO VACATE" her apartment, and a letter stating that she owes NYCHA rent. In fact, she just received one on March 19, 2007.

46. Ms. B. is extremely frail and in very poor physical health. She is very afraid that she will be evicted by NYCHA because of these notices and the fact that she has very little faith in APS.

WHEREFORE, I respectfully request that the Court grant Ms. B's motion for a Preliminary Injunction directing the defendants to promptly provide or ensure the provision adequate protective services to her.

Dated: April 6, 2007
New York, New York

JOSEPH C. KRUMMEL